## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| GREGORY WILLIAMS (K52712), | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 14 C 7407 |
| | ) | |
| | ) | Judge John Z. Lee |
| TARRY WILLIAMS, Warden, | ) | |
| Stateville Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Gregory Williams, an Illinois prisoner, brings this *pro se* habeas corpus petition [1] pursuant to 28 U.S.C. § 2254, challenging his 2009 conviction in the Circuit Court of Cook County for aggravated criminal sexual assault and aggravated kidnapping. Williams asserts that his trial counsel provided ineffective assistance at the plea bargain stage by failing to inform him of the potential for mandatory consecutive sentences at trial and misleading him to reject a favorable plea offer. For the following reasons, the petition is denied.

## Factual and Procedural Background

### I.    Factual History[1]

In 2006, Williams was indicted on a number of sexual assault and kidnapping charges in two separate cases in the Circuit Court of Cook County, 06-CR-2625

---

[1]    The following facts are drawn from the state court record. Factual findings by the last state court to rule on the merits of the petitioner's claim are presumed to be correct, unless the petitioner presents clear and convincing evidence to rebut the presumption. *Morgan v. Hardy*, 662 F.3d 790, 797 (7th Cir. 2011) (citing 28 U.S.C. § 2254(e)(1)).

("Case 2625") and 06-CR-2627 ("Case 2627"). Resp't's Answer, Ex. B, Docket Sheet ("2625 Docket"), *People v. Williams*, No. 06-CR-2625 (Cook Cty. Cir. Ct.), ECF No. 23-2, at 1; *People v. Williams*, No. 1-11-1913, 2013 WL 6844751 ¶¶ 8, 11 (Ill. App. Ct. Dec. 26, 2013). The plea bargain at issue in this case involved both Cases 2625 and 2627, *see Williams*, 2013 WL 6844751 ¶ 11, though Williams only challenges the convictions stemming from Case 2627. *See id*. ¶ 2; Resp't's Answer, Ex. A, Trial Common Law Record ("2627 Trial Record"), *People v. Williams*, No. 06-CR-2627 , ECF No. 23-1, at C13–49.

In that case, the victim (whom the Court refers to as JH) testified at trial that Williams approached her on the street the morning of January 9, 2006. *Williams*, 2013 WL 6844751 ¶ 14. She had never seen Williams before. *Id.* According to JH, Williams told her that he had a gun and instructed her to walk with him to his baby's mother's home. *Id.* While walking with Williams, JH saw her mother and brother at a bus stop, and Williams instructed her to tell them she was walking him home, which she did. *Id.* After JH and Williams arrived at the apartment, Williams threatened JH with a knife and forced her to perform oral sex and submit to him performing oral sex on her. He then forced sexual intercourse on her. *Id.* ¶¶ 16–17.

After assaulting JH, Williams apologized to her and told her to dress. *Id.* ¶ 18. Williams eventually allowed JH to leave the apartment, and she flagged down a police officer and reported the crime. *Id.* The police took her to hospital and afterwards to the police station, where she identified Williams in a line-up that same day. *Id.*

Police Detective Elizabeth Miller testified at trial that Williams confessed to the crime that evening. *See id.* ¶¶ 21, 22–25. Other than claiming that JH had first approached him and voluntarily accompanied him to his apartment, Williams's confession was materially similar to JH's account of events, including the description of the sexual assaults. *See id.* ¶¶ 22–25.

A grand jury indicted Williams on multiple charges, including multiple counts of aggravated criminal sexual assault and aggravated kidnapping. *Id.* ¶ 8. Williams's counsel sought a court-ordered mental health evaluation for "fitness and sanity" in February 2006. *Id.* Dr. Roni Seltzberg, a staff forensic psychiatrist at Forensic Clinical Services, determined that Williams was fit to stand trial with the aid of medication and was legally sane at the time of the offenses. *Id.* Williams's counsel eventually retained a psychiatrist to evaluate Williams. *See id.* ¶ 10. That psychiatrist, Dr. Carl Wahlstrom, testified at trial that Williams had had an abusive childhood, exhibited borderline intellectual functioning, and suffered from a "longstanding history of mental illness beginning in childhood," including schizophrenia. *See id.* ¶¶ 27–29.

Williams also faced similar charges in a case involving a different victim in Case 2625.[2] By July 2006, both cases were before Judge Joseph Claps. *See* 2627 Trial Record, at C2–C9; *see generally* 2625 Docket.

---

[2] The state appellate court had limited information on this case beyond the docket sheet. *See Williams*, 2013 IL App ¶ 11 ("Although the record contains very limited information regarding the second, unrelated case, the appellate briefs filed herein indicate that case involved a different victim but similar facts."). But it is apparent that Williams was charged with 28 felony counts, including charges of aggravated criminal sexual assault and aggravated kidnapping. *See* 2625 Docket at 1.

In March 2008, Williams's counsel Case 2627[3] requested an Illinois Supreme Court Rule 402 plea conference. *See* Ill. Sup. Ct. R. 402(d) (allowing trial judges to "participate in plea discussions" "upon request by the defendant and with the agreement of the prosecutor"). Prior to the conference, Williams's counsel informed the judge that she intended to pursue a finding of "guilty but mentally ill." Resp't's Answer, Ex. C, Trial Report of Proceedings ("2627 Trial Report"), at EE3–7, *People v. Williams*, No. 06-CR-2627 (Cook Cty. Cir. Ct.), ECF No. 23-3. After the conference, which was conducted off the record, the judge told the parties that if Williams pleaded guilty he would be sentenced to twenty-one years in Case 2627, to be served consecutively to a twenty-year sentence for Case 2625. *Williams*, 2013 WL 6844751 ¶ 11. Williams declined the plea offer and proceeded to a bench trial. *Id.* ¶ 2.

At the conclusion of the trial, the judge found Williams guilty of multiple counts of aggravated criminal sexual assault and aggravated kidnapping. *Id.* ¶ 32. The judge declined to find Williams guilty but mentally ill, explaining that he was convinced by Dr. Seltzberg's conclusions that Williams was "malingering" and was not mentally ill. 2627 Trial Report at RR-36. The court imposed sentences of twenty-two years on each count, ordering the sentences on three of the aggravated criminal sexual assault counts to run consecutively, and the sentences for the remaining counts to run concurrently—for an aggregate sentence of 66 years. *Williams*, 2013 WL 6844751 ¶ 35. On direct appeal, the state appellate court entered an order

---

[3] The record does not indicate whether he was represented by the same public defender in both cases.

affirming the conviction and sentence, and correcting the mittimus to add one additional day of presentencing custody credit. *Id.* ¶ 36.

Williams later pleaded guilty to the second case, and his sentence in that case was ordered to run concurrently to the sentence in the instant case. *See* 2625 Docket at 15–17.

## II.    Procedural History

Williams filed a *pro se* postconviction petition under Illinois's Post Conviction Hearing Act, 725 Ill. Comp. Stat. 5/122–1, *et seq.* Pet'r's Pet., Ex. 5/20/2011 Post-Conviction Opinion, ECF No. 1; *see also Williams*, 2013 WL 6844751 ¶ 37. He raised multiple constitutional claims, including several claims of ineffective assistance of trial counsel. *Williams*, 2013 WL 6844751 ¶ 37. The circuit court dismissed the petition as frivolous and without merit. *Id.* ¶ 38.

On appeal, Williams advanced only one claim from his earlier petition: that his trial counsel was ineffective during the plea bargaining stage. *See* Resp't's Answer, Ex. J, Pet'r's Post-Conviction App. Br. ("PC App. Pet'r's Br."), *People v. Williams*, No. 1-11-1913, ECF No. 23-10, at 14–15. Specifically, Williams claimed that his counsel was ineffective when she (1) advised him to reject the 41-year plea offer by saying that 41 years was "too much time" and "it would be best to just go to trial," and; (2) failed to inform him of the possible consequences of rejecting the court's offer, including the consequence of mandatory consecutive sentences. *Id.* at 14.

The state appellate court rejected Williams's ineffective assistance claim on the merits, *Williams*, 2013 WL 6844751 ¶ 74, finding that Williams's counsel did not render deficient performance when she advised him to reject the plea because it was

"too much time." *Id.* ¶ 73. Of note, however, the state appellate court did not analyze the other component of Williams's ineffective assistance claim—that his counsel had been deficient by failing to inform him of mandatory consecutive sentences. The court declined to analyze whether Williams had shown that he had suffered prejudice from his counsel's performance, as it had found the performance was not deficient. *Id.* ¶ 75.

Williams filed a petition for leave to appeal in the Illinois Supreme Court, pressing the same ineffective assistance claim that he had advanced before the state appellate court. Resp't's Answer, Ex. M, Petition for Leave to Appeal ("PLA"), *People v. Williams*, No. 117190, ECF No. 23-13. The Illinois Supreme Court denied the petition. *People v. Williams*, 5 N.E.3d 1128 (Ill. 2014).

Finally, Williams filed this habeas petition under 28 U.S.C. § 2254. In his petition, Williams contends that the state appellate court unreasonably applied the standards for ineffective assistance of counsel in finding that trial counsel's performance was not deficient both for advising him to reject the 41-year plea offer and for failing to advise him of mandatory consecutive sentences. Pet'r's Pet. at 5, 5A, ECF No. 1.

## Legal Standard

A writ of habeas corpus will be granted only if a petitioner demonstrates that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the Court may not grant habeas relief unless the state court's decision on the merits was contrary to, or involved an unreasonable application of,

clearly established federal law, as determined by the Supreme Court of the United States, or the state court decision is based on an unreasonable determination of facts. 28 U.S.C. § 2254(d).

"A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "An 'unreasonable application' occurs when a state court 'identifies the correct legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of petitioner's case.'" *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (quoting *Wiggins v. Smith*, 539 U.S. 510, 520 (2003)).

Clearly established federal law is the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). The state court is not required to cite to, or even be aware of, the controlling Supreme Court standard, as long as the state court's reasoning and result do not contradict the Supreme Court standard. *Early v. Packer*, 537 U.S. 3, 8 (2002).

The Court begins with a presumption that state courts both know and follow the law. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). This presumption is especially strong when the state court is considering well-established legal principles that have been routinely applied in criminal cases for many years. *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013).

Furthermore, in reviewing a state court's decision, a federal court's analysis is "backward looking." *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). The court is limited to reviewing the record before the state court at the time that court made its decision. *Id.* The court is also limited to considering the Supreme Court's "precedents as of 'the time the state court renders its decision.'" *Id.* (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003)).

Finally, it must be said that "AEDPA's standard is intentionally 'difficult [for Petitioner] to meet.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (quoting *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014)). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). This "'highly deferential standard' . . . demands that state-court decisions be given the benefit of the doubt." *Visciotti*, 537 U.S. at 24 (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)). As the Supreme Court has held, habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Richter*, 562 U.S. at 102–03 (quotation marks omitted). "Under § 2254, a habeas court must determine what arguments or theories supported, or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e] [Supreme] Court." *Id.* at 102.

<u>Analysis</u>

To establish an ineffective assistance of counsel claim, a petitioner must show that (1) counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced petitioner's defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This standard applies to "ineffective-assistance claims arising out of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *see also Missouri v. Frye*, 566 U.S. 134, 140 (2012). To demonstrate prejudice in the plea context, "a [petitioner] must show the outcome of the plea process would have been different with competent advice."

For the reasons explained below, the Court finds that the state appellate court's application of the *Strickland* performance prong to Williams's claim was not an unreasonable application of clearly established Supreme Court law.[4] The Court finds, moreover, that even if Williams were able to demonstrate that the state appellate court's conclusion on the performance prong was unreasonable, Williams would not be able to demonstrate prejudice.

## I.    *Strickland* Performance Prong

The performance prong of the *Strickland* test requires a defendant to show "that counsel's representation fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688. Counsel's performance is to be generously construed; "a court must indulge a strong presumption that counsel's conduct falls within the wide

---

[4]    Williams did not argue in his habeas corpus petition that the state appellate court's decision was contrary to clearly established law, nor could he have plausibly done so. The state appellate court correctly identified *Strickland* as the applicable law, and Williams did not allege that the Supreme Court had decided a case with "materially indistinguishable facts" from the present case. *See Cone*, 535 U.S. at 694.

range of reasonable professional assistance." *Id.* at 689. Applying *Strickland* under AEDPA, which itself requires deference, results in a double level of deference to the state court determination. *Richter*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

In his petition to the state appellate court, Williams argued that trial counsel's performance was deficient because counsel (1) misled Williams to reject a plea offer, and (2) failed to inform Williams of mandatory consecutive sentences he would face if convicted at trial. The state appellate court rejected the first argument, and did not directly address the second, although this Court assumes under *Richter* that it was decided on the merits. *See Richter*, 562 U.S. at 99 (citing *Harris v. Reed*, 489 U.S. 255, 265 (1989)). For the reasons explained below, the Court finds that the state appellate court reasonably applied the *Strickland* deficient-performance prong.

## A.      Advising Williams to Reject the Plea Offer

Williams argued to the state appellate court that trial counsel provided ineffective assistance when she advised him to reject a plea offer of twenty-one years, consecutive to a twenty-year sentence in Case 2625. PC App. Pet'r's Br. at 19; *Williams*, 2013 WL 6844751 ¶ 4.

In his petition to the state appellate court, Williams contended that it was "misleading for counsel to advise Williams to go to trial because the sentence offer was too high when, under the law, Williams could not have received a shorter sentence." PC App. Pet'r's Br. at 19. This argument relied on two important assumptions: first, that Williams was facing three counts of aggravated sexual assault and one count of aggravated kidnapping, each of which carried a mandatory

minimum of six years and were required to be served consecutively; and second, that "the State's evidence was overwhelming," PC App. Pet'r's Br. at 14, 18; *see also Williams*, 2013 WL 6844751 ¶ 60, and hence that he was facing a virtual certainty of at least a twenty-four year sentence if he went to trial, PC App. Pet'r's Br. at 19.

While the State agreed that Williams was facing four counts that carried a mandatory minimum of twenty-four years if he were found guilty of all of them, they did not agree that he was certain to be found guilty of those charges at trial. *See* Resp't's Answer, Ex. K, State. Br. ("PC App. Govt. Br.") at 35–36, *People v. Williams*, No. 1-11-1913, ECF No. 23-11. Specifically, the State argued that "while the evidence on the [sexual assault charges] was virtually uncontested, the defense did contest the kidnapping insofar as defendant's statement to the police indicated that the victim accompanied defendant to his home voluntarily and defense counsel argued that defendant did not 'snatch' the victim off the street." PC App. Govt. Br. at 35–36; *see also Williams*, 2013 WL 6844751 ¶ 71. The State argued that therefore "there was a possibility that defendant could face only an 18-year term following trial," three years less than the plea offer for the case. PC App. Govt. Br. at 35–36.

The state appellate court agreed with the State's view, determining that Williams could have been acquitted of aggravated kidnapping, and, therefore, the strategy to proceed to trial and defend against the kidnapping charge, "although ultimately unavailing, was a reasonable trial strategy." *Williams*, 2013 WL 6844751 ¶ 73. The state appellate court relied on an Illinois Supreme Court case, *People v. Curry*, which applied the *Strickland* standard to a claim of ineffective assistance of counsel at the plea-bargain stage. 687 N.E. 2d 877, 882 (Ill. 1997), *abrogated on*

*other grounds by People v. Hale*, 996 N.E.2d 607, 614–15 (Ill. 2013). As the state appellate court noted, *Curry* distinguished between two types of scenarios: "(a) when counsel's advice is predicated on an understanding 'which was plainly erroneous when viewed at the time of plea negotiations' and (b) when a defense recommendation is the product of strategy or judgment which was proven to be unwise only in hindsight.'" *Williams*, 2013 WL 6844751 ¶ 73 (quoting *Curry*, 687 N.E. at 887). The state appellate court then categorized Williams's counsel's advice to reject the offer as "at worst" in the category of "unwise only in hindsight." *Williams*, 2013 WL 6844751 ¶ 73.

Moreover, the state appellate court also reasoned that counsel might have advised Williams to reject the plea offer because Williams stood a chance of acquittal or a lesser sentence in the second case:

> Even if we agreed with defendant that defense counsel's advice to reject the guilty plea offer was unsound as to this case, defendant ignores that the offer pertained to two cases. The court told the parties that if defendant pleaded guilty to the charges he would be sentenced to a 21-year prison sentence in the instant case, consecutive to a 20-year sentence in an unrelated case. We know that the second offense concerned "similar charges" and a person named "S.D.," but defendant has not described the offense in any detail, much less shown that counsel's advice to reject the offer was unsound as to the second offense. It is entirely possible that counsel advised defendant to reject the plea offer, because he stood a chance of acquittal or a lesser sentence in the second case.

*Williams*, 2013 WL 6844751 ¶ 74. On both of these grounds—that Williams had not shown that advising him to reject a twenty-one-year offer as to the present case was clearly unsound, and because Williams had not provided any information about the

second case—the state appellate court found that Williams had not shown that counsel's performance was deficient under *Strickland*. *Id.*

The state appellate court's conclusion that it was reasonable for Williams's trial counsel to advise him to reject the plea offer was a reasonable application of Supreme Court law. Williams did not present any information about Case 2625 beyond its docket. *See Williams*, 2013 WL 6844751 ¶ 11. Given the lack of information about Case 2625, and the fact that the plea offer concerned both cases, it was reasonable for the Illinois appellate court to conclude that Williams did not defeat the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Based on the available facts, it is simply impossible to say that counsel did not advise Williams to reject the plea offer because it was the better net decision for both cases. Accordingly, the state appellate court's holding that Williams's trial counsel did not perform deficiently by advising him to reject the plea offer because it was "too much time" was not an unreasonable application of Supreme Court law.

**B.     Failure to Advise about Consecutive Sentences**

Williams also argued to the state appellate court that his trial counsel performed deficiently by "fail[ing] to advise him [at the plea bargain stage] that he was subject to mandatory consecutive sentences." PC App. Pet'r's Br. at 2. This component of his ineffective assistance of counsel claim appears to encompass two related arguments: first, that he was not informed that four of his counts were required to run consecutively under Illinois law, *see id.* at 16, and second, that he was not informed of the highest possible sentence he would face at trial under mandatory

consecutive sentencing, *see id.* at 22 ("Williams's petition pleads that he was not told about a possible 120-year term in either or both cases."); *id.* at 23 (Williams rejected the plea offer because his counsel had not "fully advis[ed] him of the maximum consecutive sentences he faced if convicted."). Williams now argues that it was unreasonable for the state appellate court to find his trial counsel was not ineffective on those grounds.

The state appellate court did not address this aspect of Williams's claim. Instead, the court construed Williams's claim as only arguing that counsel had provided ineffective assistance when she advised him to reject the plea offer. *See Williams*, 2013 WL 6844751 ¶¶ 59–61 (describing Williams's claim as arguing that the circuit court had erred in dismissing his petition as frivolous because "[i]t was completely unreasonable for counsel to advise [Williams] to go to trial" (quoting PC App. Pet'r's Br. at 19)); *see also id.* ¶¶ 73–75 (finding that Williams had not satisfied the first *Strickland* prong because counsel could reasonably aim for an acquittal on the aggravated kidnapping charge and because the offer pertained to two cases and Williams did not provide any information about the second case).

Although the state appellate court did not directly address this aspect of Williams's claim, the Court presumes that the state court still decided the matter "on the merits," as defined by 28 U.S.C. § 2254(d). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 562 U.S. at 99 (citing *Harris v. Reed*, 489 U.S. 255, 265 (1989)). The *Richter* presumption applies

14

when the state court's decision expressly addresses some but not all of a prisoner's claims. *Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013); see also *Lee v. Avila*, 871 F.3d 565, 572 (7th Cir. 2017) (applying the *Richter* presumption to an argument that counsel's failure to object to a prosecutor's closing was ineffective assistance, when the argument "was not raised as an independent *Strickland* claim in the state appellate court" but was rather "mentioned as part of the factual basis for [petitioner]'s broader claim"). Accordingly, the Court presumes that this matter was adjudicated on the merits and that the state appellate court found that Williams did not make a sufficient showing that counsel was ineffective in this regard. The review of this denial proceeds under § 2254(d)'s deferential standard, where the Court asks whether any fairminded jurist might find the state's approach in line with Supreme Court holdings. *See Richter*, 562 U.S. at 102; *Lee,* 871 F.3d at 572 (applying this test when a state court failed to address all aspects of an ineffective assistance of counsel claim).

While the State does not directly acknowledge the state appellate court's failure to address this aspect of the claim, it does present one way to view the court's decision on this matter as reasonable. The State argues that Williams never specifically alleged in his post-conviction petition that trial counsel misinformed or failed to inform him of the sentencing range. Instead, they contend, he merely stated that "defense counsel never apprised Petitioner that in the instant case alone, there were 37 counts for which Petitioner could receive multiple or consecutive sentences." Resp't's Answer at 19 (quoting Ex. I, Postconviction Common Law Record, Pet'r's Postconviction Pet. ("Pet'r's PC Pet."), at C19, ECF No. 23-9).

There are two ways to read the State's argument. The first is to view it as an implication that Williams has procedurally defaulted by not properly presenting this aspect of his claim to the state trial court. But the State has already conceded that Williams has fully exhausted his overall claim for ineffective assistance of counsel at the plea bargain stage. *See* Resp't's Answer at 14. And to the extent that the State has not affirmatively raised a procedural default argument, the Seventh Circuit dissuades district courts from *sua sponte* raising the issue. *See Perruquet v. Briley*, 390 F.3d 505, 519 (7th Cir. 2004) ("[T]he decision whether to assert an affirmative defense like procedural default lies with the Illinois Attorney General in the first instance, and in the ordinary course of events, her failure to raise the defense in a timely manner will result in a forfeiture." (citations omitted)).

The Court therefore reads the State's brief instead to contend that Williams did not lay a sufficient factual basis to support a claim that counsel had failed to inform him about the mandatory consecutive nature of his charges. In addition to the claim that he was never apprised of the 37 counts he was facing, Pet'r's PC Pet. at C19, Williams's post-conviction petition stated both that "defense counsel never advised [Williams] as to the possible consequences of rejecting the plea offer," *id.*, and that, "subsequent to the Court's [plea] offer," counsel told Williams that "since Petitioner was not on bond when the instant case allegedly occurred, 85% of the largest term [21 years] would have to be served," *id.* at C19–20 (alterations in original). The Court finds that Williams's allegations on this point are sufficiently vague and contradictory (he was alternately "never advised" of the "possible consequences" and then advised of a specific time he would need to serve) that a

fairminded jurist could find the evidence insufficient to support a claim of ineffective assistance of counsel.[5]

Because a fairminded jurist could find the evidence insufficient to support a claim that Williams's counsel failed to advise him of the mandatory consecutive nature of the sentences he was facing, the state appellate court's decision on this aspect of Williams's claim was "within the bounds of reasonable judicial opinion." *Lee*, 871 F.3d at 572. As a result, the state appellate court's decision was not an unreasonable application of federal law.

## II. *Strickland* Prejudice Prong

*Lafler v. Cooper* lays out the steps to satisfy the prejudice prong of the *Strickland* test where ineffective assistance of counsel led to rejection of a favorable plea bargain. 566 U.S. 156 (2012). First, "a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted

---

[5] The State also argues that Williams's statement that his defense counsel "advised Petitioner to decline the Court's offer of 21 and 20 years consecutive, while fully cognizant that in the instant case alone, the Court could impose consecutive sentences with an aggregate total of 120 years," Pet'r's PC Pet. at C24, suggests that Williams's counsel informed him that he faced a possible 120-year sentence. Resp't's Answer at 19. The Court declines to so read Williams's statement. Given his claims, it is far more likely that Williams is merely speculating about his counsel's knowledge at the time.

Moreover, because the Court has already identified one basis for finding that the state appellate court's decision was not an unreasonable application of clearly established Supreme Court law, the Court need not explore the contours of whether failing to inform a criminal defendant about mandatory consecutive sentencing constitutes ineffective assistance of counsel. The Court recognizes, however, that multiple federal courts of appeal have concluded that "an attorney who fails to inform his clients of direct consequences of a conviction is ineffective," and that direct consequences include "the minimum amount of time a defendant must serve and the maximum amount of time he may serve." *McDonald v. Hardy*, 359 Fed. Appx. 650, 655 (7th Cir. 2010) (collecting cases). The Supreme Court, however, has not yet so held.

the plea and the prosecution would not have withdrawn it in light of intervening circumstances)." *Lafler¸* 566 U.S. at 164. The defendant must also demonstrate "that the court would have accepted its terms," and finally, "that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Id.*

The Seventh Circuit has further clarified the first component of this test, holding in *Quintana v. Chandler* that a petitioner must come forward with evidence demonstrating he or she would have accepted the plea, beyond a mere "self-serving statement" and a contention that "most or many defendants in his position would accept the plea." 723 F.3d 849, 857 (7th Cir. 2013). A petitioner "must offer something more than the large gap in sentence lengths to show that he would have accepted the sentence," because "even in the face of a favorable plea offer and unfavorable facts, some defendants might still advance to trial, swearing they are innocent and thinking they can succeed against the state." *Id.*

Because the state appellate court did not find that the *Strickland* performance prong was met, it explicitly did not consider the prejudice prong. *Williams*, 2013 WL 6844751 ¶ 75. Accordingly, review of this prong is *de novo. See Earls v. McCaughtry*, 379 F.3d 489 (7th Cir. 2004) (reviewing *Strickland* prejudice prong *de novo* because the last reasoned state court decision did not adjudicate it on the merits).

The Court easily finds that Williams's claim fails the first component of the *Lafler* test for *Strickland* prejudice. Beyond the lack of objective evidence demonstrating that Williams would have accepted the plea if not for counsel's ineffectiveness, there is a gaping hole in his record regarding any details about the

second case. Even if, as Williams alleges, twenty-one years was a bad bargain in the instant case, and even if Williams was not advised of the mandatory consecutive nature of the sentences he faced, with almost no information about Case 2625 there is no way to make any prediction about whether Williams would have accepted the plea under other circumstances. For all this Court knows, the evidence was scant on the other case and acquittal was likely, making the overall plea of forty-one years much less attractive even if Williams had indeed fully understood the nature of the sentences he faced in this case.

Accordingly, Williams is unable to demonstrate prejudice under *Strickland* and the state appellate court's decision to deny Williams's ineffective assistance of counsel claim is a reasonable application of clearly established federal law.

## III.  Request for an Evidentiary Hearing

While this habeas case was pending, Williams filed a motion for an evidentiary hearing in this Court. *See* ECF No. 26. Williams contends that an evidentiary hearing is necessary "to find out why counsel told [Williams] to reject the court's offer" and whether "counsel fully informed his client, if he rejects the offer the possible sentence would be greater and run consecutive." *Id.* at 5.

But AEDPA only permits district courts to hold evidentiary hearings if, among other things, that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B). Functionally, AEDPA permits evidentiary hearings only by those prisoners "who present new evidence of their innocence." *McQuiggin v.*

*Perkins*, 569 U.S. 383, 395 (2013). Because Williams makes no claim of innocence—in fact, his entire petition rests on the idea that his guilt was obvious to any factfinder—he is ineligible for an evidentiary hearing.

## Certificate of Appealability

Under Rule 11 of the Rules Governing § 2254 Cases, the Court must consider whether it should issue a Certificate of Appealability when entering a final order adverse to a petitioner. Issuing a certificate is appropriate only if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If a court denies a petition on procedural grounds, a petitioner must show that both the procedural ruling and the underlying constitutional claim are debatable. *Id.* at 484.

Here, given the absence of information about Williams's second case and the presumption that counsel is competent, no reasonable jurist could find the Court's assessment of Williams's *Strickland* claim was debatable. The Court therefore declines to issue a certificate of appealability.

## Conclusion

For the reasons stated herein, the Court denies Williams's habeas corpus petition [1] on the merits. The Clerk is instructed to enter a judgment in favor of Respondent and against Williams. Williams's motion for an evidentiary hearing [27] is also denied. Williams is advised that this is a final decision ending his case in this Court. The Court declines to issue a certificate of appealability. If Williams wishes

to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment.  *See* Fed. R. App. P. 4(a)(1).

**IT IS SO ORDERED.**          **ENTERED   6/29/18**

_____
**John Z. Lee**
**United States District Judge**